UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| PATSY SIMONS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. V-05-71 |
| | § | |
| HARRISON WALDROP & UHERECK, | § | |
| L.L.P., | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND ORDER**

Pending before the Court is Defendant's Motion for Summary Judgment and Motion for Reconsideration of March 24 Order (Dkt. #23). After having considered the arguments of the parties, the evidence, and relevant law, the Court finds that the motion should be GRANTED in part and DENIED in part.

**Factual and Procedural Background**

Patsy Simons ("Plaintiff") filed her Original Complaint (Dkt. #1) on June 22, 2005 alleging age-related employment discrimination in violation of the Age Discrimination and Employment Act, 29 U.S.C. §§ 621-634 ("ADEA") and the Texas Labor Code, § 21.051. Plaintiff alleges that she was terminated from her employment as office manager with Harrison Waldrop & Uherek, L.L.P. ("Defendant") after 43 years of service to the firm. At the time of her termination, Plaintiff was 66 years old. Plaintiff claims that on June 24, 2004, Defendant's Managing Partner, Steve Van Manen ("Van Manen") called Plaintiff to a meeting in which he questioned her about her age and years of service with the firm and subsequently informed her that she would be terminated in late December 2004 or January 2005. Plaintiff's discharge was effective January 31, 2005.

On August 24, 2005, Defendant filed its motion to dismiss under Rule 12(b)(1) (Dkt. #8).

Plaintiff responded to the motion on September 13, 2005 (Dkt. #9). The Court's November 22, 2005 Scheduling Order (Dkt. #13) allowed the Parties to (1) conduct discovery "relevant to the jurisdictional issues raised in Defendant's Rule 12(b)(1) Motion to Dismiss" for a period of 90 days and, thereafter, (2) file supplemental briefs. The Parties filed supplemental briefing and on March 24, 2006 the Court denied Defendant's motion. Before the Court is Defendant's motion to reconsider its ruling of March 24, and in the alternative grant summary judgment as to the same issues taking into consideration evidence outside the pleadings. The Court will reconsider the March 24 Order and address the motion for summary judgment separately.

**Analysis**

**1.     Reconsideration of Plaintiff's Motion to Dismiss**

Defendant contends that Plaintiff's claims should be dismissed because she failed to establish that Defendant employed the requisite number of employees to qualify as an employer under the ADEA. Specifically, Defendant argues that (1) this Court lacks subject matter jurisdiction over Plaintiff's claims because she cannot establish all the elements of a claim under the ADEA, and (2) for the same reason, Plaintiff has failed to state a claim for which relief can be granted under the ADEA.[1]

The Court based its decision to deny Defendant's 12(b)(1) motion to dismiss for lack of subject matter jurisdiction on the Supreme Court's recent decision in *Arbaugh v. Y&H Corp.*, 126 S. Ct. 1235 (2006), 2006 WL 397863 (U.S.), 163 L. Ed.2d 1097 (2006). In *Arbaugh*, the Supreme Court held unequivocally that the numerosity requirement under Title VII of the Civil Rights Act

---

[1] Upon reviewing Defendant's Supplemental Motion to Dismiss (Dkt. #15), the Court believes that it misconstrued Defendant's assertion in footnote one that the supplementation did not apply to Defendant's 12(b)(1) argument against Plaintiff's state law claim. However, since the issue of the timeliness of Plaintiff's state law discrimination claim has been offered as part of Defendant's motion for summary judgment, the Court will address it under Rule 56.

of 1964 is an "essential ingredient of a federal claim for relief" and not an element of a court's "jurisdiction over a controversy." *Id.* at 1238. The Court will not now restate its analysis of *Arbaugh* set forth in its March 24, 2006 Order, but suffice it to say that the Court finds that the reasoning employed in *Arbaugh* should be applied to the numerosity requirement under the ADEA. Furthermore, Defendant's emphatic appeal to the Fifth Circuit's opinion in *Coleman v. New Orleans and Baton Rouge S.S. Pilots' Assoc.*, 437 F.3d 471 (5th Cir. 2006), is misplaced. First, and foremost, *Coleman* was written a month before the Supreme Court came down with its opinion in *Arbaugh* and, therefore, *Arbaugh* is the superceding precedent. Furthermore, in *Coleman*, the Fifth Circuit held that "The terms 'employer' and 'employee' have been identically treated under the ADEA and Title VII. Thus, cases interpreting the terms under either statute may be considered in determining whether the defendants are employers for the purposes of the ADEA." *Id.* at 479 n.7. Therefore, this Court has every reason to believe that the Fifth Circuit would apply the reasoning of *Arbaugh* to a claim under the ADEA. Additionally, *Coleman* deals with a motion for summary judgment and never addresses the jurisdictional sufficiency of the plaintiff's claims. Therefore, the Court finds that its Order of March 24 was proper with regard to Plaintiff's 12(b)(1) motion.

Defendant also contends that Plaintiff has failed to state a claim for which relief can be granted because she cannot establish that Defendant meets the definition of "employer" under the ADEA. The Court denied this portion of Defendant's motion to dismiss on the grounds that Plaintiff has properly plead that Defendant "employs the requisite number of persons to be covered under the ADEA." In considering a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court is compelled to "accept as true the well-pleaded factual allegations in the complaint." *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004) (citing *Herrman Holdings Ltd. v. Lucent Tech. Inc.*, 302 F.3d 552, 557 (5th Cir. 2002). Dismissal is appropriate under Rule

12(b)(6) "only if 'it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief.'" *Id.* (quoting *Lowrey v. Texas A&M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997)).  In the case at bar, Plaintiff plead in her response to Defendant's motion to dismiss, that she believed Defendant employed 20 or more employees and that she would need to conduct discovery in order to establish this point.  This factual allegation is sufficient to survive a 12(b)(6) motion to dismiss. The Court need simply accept that the factual allegation made by Plaintiff, if true, would satisfy the requirement of the ADEA, and that there is some probability that discovery will provide Plaintiff with sufficient evidence to prove the allegation.  Although Plaintiff appended her supplemental pleadings with voluminous exhibits, the Court has not relied on anything outside the pleadings in considering Defendant's 12(b)(6) motion.  The Court thereby excluded all matters outside the pleadings. The Court cannot be compelled to convert a motion to dismiss into a motion for summary judgment by the mere inclusion of evidence outside the pleadings.  The Court addressed Defendant's 12(b)(6) motion on the pleadings alone and found that the motion should be denied.  The Court now finds that that determination was proper.

**2.    Summary Judgment**

The Court will now turn to Defendant's motion for summary judgment.

*A.    Standard of Review*

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c); *see also Christopher Village, LP v. Retsinas*, 190 F.3d 310, 314 (5th Cir. 1999).  The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment, there must be an absence of any genuine issue of material

fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1986). An issue is "material" if its resolution could affect the outcome of the action. *Daniels v. City of Arlington, Tex.*, 246 F.3d 500, 502 (5th Cir. 2001), *cert. denied*, 122 S. Ct. 347 (2001).

The moving party bears the initial burden of informing the court of all evidence demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Only when the moving party has discharged this initial burden does the burden shift to the non-moving party to demonstrate that there is a genuine issue of material fact. *Id*. at 322. If the moving party fails to meet this burden, then they are not entitled to a summary judgment and no defense to the motion is required. *Id.*

"For any matter on which the non-movant would bear the burden of proof at trial . . . , the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718-19 (5th Cir. 1995); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). To prevent summary judgment, the non-movant must "respond by setting forth specific facts" that indicate a genuine issue of material fact. *Rushing v. Kansas City S. Ry. Co.*, 185 F.3d 496, 505 (5th Cir. 1999).

When considering a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in favor of the non-movant. *See Yaquinto v. Segerstrom* (*In re Segerstrom*), 247 F.3d 218, 223 (5th Cir. 2001); *see also Samuel v. Holmes*, 138 F.3d 173, 176 (5th Cir. 1998). The court must review all of the evidence in the record, but make no credibility determinations or weigh any evidence, disregard all evidence favorable to the moving party that the jury is not required to believe, and give credence to the evidence favoring the nonmoving party as well as to the evidence supporting the moving party

that is uncontradicted and unimpeached. *Willis v. Moore Indep. Sch. Dist.*, 233 F.3d 871, 874 (5th Cir. 2000). However, the non-movant cannot avoid summary judgment simply by presenting "conclusory allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation." *See TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *see also Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (en banc).

  *B.*  *ADEA Numerosity*

The purpose of the ADEA is to prevent age discrimination in employment. 29 U.S.C. § 621(b). The ADEA, like other federal anti-discrimination legislation, is inapplicable to very small businesses.[2] To that end, the ADEA defines the term "employer" to mean "a person engaged in an industry affecting commerce who has twenty or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year." 29 U.S.C. § 630(b). In order for Plaintiff to succeed on her ADEA claim, she must prove that Defendant employed twenty or more employees during the years current to or preceding the period of time in which she suffered discrimination. Based on the facts as alleged by Plaintiff, the relevant years are 2003 and 2004.

In its motion, Defendant contends that it did not employ twenty or more employees for at least twenty calendar weeks during 2003, 2004, or 2005. Specifically, Defendant contends that seven parties identified as "employees" by Plaintiff were not "employees" as defined by the ADEA. Without the inclusion of these seven individuals, Defendant only employed seventeen employees during at least twenty calendar weeks in each of 2003, 2004, and 2005. Defendant does not dispute the "employee" status of the other seventeen employees. The pivotal question at bar is thus whether the seven disputed parties were "employees" under the ADEA.

---

[2] *See, e.g.*, 42 U.S.C. § 12111(5) (Americans with Disability Act); 42 U.S.C. § 2000(e)(b) (Title VII of the Civil Rights Act of 1964).

The ADEA circularly defines the term "employee" to mean "an individual employed by any employer." 29 U.S.C. § 630(f). Fortunately, the Supreme Court's decision in *Clackamas Gastroenterology Assoc., P.C. v. Wells*, 538 U.S. 440 (2003), provides the Court with ample guidance "to fill the gap in the statutory text." *Clackamas*, 538 U.S. at 444. In *Clackamas*, the Supreme Court explained that the definition of "employee" should be informed by common law agency and master-servant principles. The Supreme Court adopted specific Equal Employment Opportunity Commission ("EEOC") guidelines discussing "both the broad question of who is an 'employee' and the narrower question of when partners, officers, members of boards of directors, and major shareholders qualify as employees." *Id.* at 448-49. The adopted EEOC guidelines are split into (1) an 11-factor inquiry taken from the Supreme Court's decision in *Nationwide Mutual Insurance Co. v. Darden*, 503 U.S. 318 (1992), which was intended to identify individuals whose independence from the employer is such that the individual would be considered an independent contractor at common law ("*Darden* inquiry"),[3] and (2) a 6-factor inquiry intended to identify individuals whose control of the business association is analogous to ownership such that the individual stands in the shoes of the employer not the employee ("*Clackamas* inquiry"). *Id.* (citing to EEOC Compliance Manual § 605.0008 – § 605.0010). To determine whether any of the seven disputed individuals are "employees" under the ADEA, the Court must apply the appropriate common-law inquiry to each individual. The Court determines which factors to apply depending on how the Defendant has characterized that individual. Based on Defendant's characterizations of

---

[3] The *Clackamas* opinion refers to a "16-factor inquiry" in the EEOC Compliance Manual based upon the factors set forth in *Darden*. See *Clackamas*, 538 U.S. at 449. The Court has not reviewed the EEOC Compliance Manual, but has only identified 11 factors set forth in *Darden*. See *Darden*, 503 U.S. at 323-24. Therefore, the Court will apply the 11-factor inquiry set forth in *Darden* without the apparent 5 additional factors included in the EEOC Compliance Manual.

the seven disputed individuals, the Court will consider Joe Bland ("Bland"), Albert Harrison ("Harrison"), Hamilton Redmond ("Redmond"), and Raymond Uherek ("Uherek") as independent contractors and analyze each under the 11-factor *Darden* inquiry, and consider Clay Van Pelt ("Van Pelt"), Edward Woolson ("Woolson"), and Dennis Cihal ("Cihal") as partners and analyze each under the 6-factor *Clackamas* inquiry.

### 1.     Bland, Harrison, Redmon, and Uherek

Defendant contends that Bland, Harrison, Redmon, and Uherek were each former partners in retirement status who continued to provide occasional services to firm clients on an independent contractor basis. Because the common-law test articulated in *Darden* to determine whether an individual is an "employee" or "independent contractor" contains "no shorthand formula or magic phrase that can be applied to find the answer, . . . all of the incidents of the relationship [between the individual and the firm] must be addressed and weighed with no one factor being decisive." *Darden*, 503 U.S. at 324 (quoting *N.L.R.B. v. United Ins. Co. of America*, 390 U.S. 254, 258 (1968)). The *Darden* inquiry is set forth as follows:

> In determining whether a hired party is an employee under the general common law of agency, we consider the hiring party's right to control the manner and means by which the product is accomplished. Among the other factors relevant to this inquiry are the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party.

*Id.* at 323–24 (quoting *Community for Creative Non-Violence v. Reid*, 490 U.S. 730, 752–52 (1989)). With regard to Bland, the following facts relevant to his employee status are not in dispute:

(1.)   Bland voluntarily withdrew as a firm partner in 2001;[4]

(2.)   Bland worked for 8 weeks in 2003 (from February 13, 2003 through April 12, 2003 and for 4 hours on September 14, 2003);[5]

(3.)   Bland worked for 7 weeks in 2004 (from February 22, 2004 through April 14, 2004);[6]

(4.)   During both 2003 and 2004, Bland worked on a full-time basis as a CPA with another local entity, the Tom O'Connor Estate;[7]

(5.)   Bland provided services to Defendant's clients on an as needed contract basis;[8]

(6.)   Bland had payroll related taxes withheld from his salary and was issued a W-2 by Defendant;[9]

(7.)   Bland was listed on the Texas Workforce Commission Employer's Quarterly Report as an "employee" of Defendant for the first three quarters of 2003 and the first two quarters of 2004;[10]

(8.)   Bland is designated as an "employee" in Defendant's payroll records for 2003 and 2004.[11]

---

[4] Defendant's Motion for Summary Judgment (Dkt. #23), Exhibit A, p.2.

[5] *Id.*

[6] *Id.*

[7] Defendant's Motion for Summary Judgment (Dkt. #23), p.15.

[8] *Id.*

[9] Defendant's Motion for Summary Judgment (Dkt. #23), Exhibit A, p.2.

[10] Plaintiff's Response (Dkt. #24), p.16.

[11] *Id.*

Conversely, the following facts are in dispute:

(1.)  Defendant contends that Bland had full professional discretion and judgment as to the details, time, and manner of the services provided,[12] whereas Plaintiff contends that Defendant assigned specific work to Bland;[13]

(2.)  Defendant contends that it did not supervise Bland's work,[14] whereas Plaintiff argues that Defendant supervised Bland's work "to an extent similar to the supervision of the work of other professional employees (staff accountants). . . ."[15]

The determination for the Court is thus, whether the undisputed facts lead to only one reasonable conclusion as to Bland's employment status, or resolution of the disputed facts by the jury is required. The undisputed facts that Bland had withdrawn from the partnership and worked only a handful of weeks each year for Defendant thereafter tend to suggest that he was an independent contractor. Conversely, the fact that Defendant chose to designate Bland as an employee for reporting and tax purposes tends to suggest that Bland was working for Defendant in an employee capacity. The linchpin of the *Darden* inquiry, however, is what sort of independence Bland retained in performing services for Defendant's clients and how much control Defendant exercised over Bland's provision of these services. On that point, the affidavit of Stephen W. Van Manen, ("Van Manen") managing partner of the firm, attached to Defendant's motion, and the affidavit of Patsy Simons, attached to Plaintiff's response, are unreconcilable. Van Manen testifies that Bland was completely independent of the firm in his provision of professional services to firm clients and

---

[12] Defendant's Motion for Summary Judgment (Dkt. #23), p.15.

[13] Plaintiff's Response (Dkt. #24), Exhibit A, ¶ 13.

[14] Defendant's Motion for Summary Judgment (Dkt. #23), p.15.

[15] Plaintiff's Response (Dkt. #24), Exhibit A, ¶¶ 10 & 13.

Plaintiff testifies that Defendant exercised the same level of control over Bland's work that it did over the work of other professional level employees. In its reply, Defendant objects to Simons' affidavit to the extent that it draws conclusions about firm "management decisions, supervision, oversight, counseling, work assignment workings and decisions."[16] Defendant contends that Plaintiff has no personal knowledge of these matters and, consequently, her testimony is purely speculative. Defendant is correct to assert that supporting affidavits must be based on personal knowledge. However, Plaintiff states in her affidavit that she has personal knowledge of the facts contained therein and Defendant has failed to provide any evidence that would unequivocally discredit her testimony. Defendant does not dispute the fact that Plaintiff worked at the firm for more than four decades and was the office manager during the period in question. The Court cannot conclusively determine that no reasonable juror could believe that Plaintiff has personal knowledge of the facts alleged in her affidavit. The affidavit is thus admissible for summary judgment purposes.

Therefore, the Court is left with a genuine issue of material fact as to the level of control Defendant exercised over Bland's work. The question of Bland's employment status is thus not amenable to summary judgment.

With regard to Harrison, the following facts relevant to his employment status are not in dispute:

   (1.)   Harrison withdrew from the partnership prior to 2003;

   (2.)   The terms of Harrison's withdrawal agreement allow for him to continue to provide services to the firm "on a contract services basis";

---

[16] Defendant's Objections to Plaintiff's Summary Judgment Evidence and Reply to Plaintiff's Summary Judgment Response (Dkt. #25), p.2.

> (3.)   Harrison was listed on the Texas Workforce Commission Employer's Quarterly Report as an "employee" of Defendant for the first two quarters of 2003 and the first two quarters of 2004;
>
> (4.)   Bland is designated as an "employee" in Defendant's payroll records for 2003 and 2004.

Conversely, the following facts are in dispute:

> (1.)   Defendant contends that Harrison's work was not supervised by Defendant,[17] whereas Plaintiff contends that Defendant "supervised the work of [Harrison] to the same extent it supervised the work of staff accountants."[18]
>
> (2.)   Defendant contends that Harrison had sole control over the locating, timing, and manner of his work for clients,[19] whereas Plaintiff argues that the firm "participated in the assignment of work" and "had the power to exert control over the former partners who performed accounting services for the firm."[20]

The Court's determination is the same as it was for Bland. The characterizations of Harrison's work in the affidavits offered by the Parties are simply irreconcilable. As such, the issue of Harrison's employment status is not amenable to summary judgment. Similarly, the employment status of Redmon and Uherek is torn between irreconcilable factual characterizations in the affidavits of Simons and Van Manen. Although neither Redmon nor Uherek had payroll related taxes withheld from their compensation and both received an IRS form K-1 indicating self-employment during

---

[17] Defendant's Motion for Summary Judgment (Dkt. #23), p.17.

[18] Plaintiff's Response (Dkt. #24), Exhibit A, ¶ 10.

[19] Defendant's Motion for Summary Judgment (Dkt. #23), p.17.

[20] Plaintiff's Response (Dkt. #24), Exhibit A, ¶ 10.

2003 and 2004, the *Darden* inquiry which controls their status as "employees" under the ADEA requires the court or the trier of fact to consider the entirety of the evidence concerning the relationship between employee and employer. The Court cannot make a determination as a matter of law under the *Darden* inquiry where there is a disputed issue of material fact relevant to the employment relationship. Therefore, the Court cannot grant summary judgment as to any of the withdrawn partners who provided services to Defendant's clients during 2003 and 2004.

### 2. Van Pelt, Woolson, and Cihal

Defendant contends that Van Pelt, Woolson, and Cihal were partners of the firm during 2003 and 2004 and therefore cannot be considered "employees" under the ADEA. Plaintiff argues in response that Van Pelt, Woolson, and Cihal had the three smallest partnership shares and were, therefore, subject to the control of the more senior partners. Partners are not considered "employees" under the common law if they have the degree and type of control over the partnership that is more analogous to the common law role of the employer. Whether Van Pelt, Woolson, and Cihal were "employees" under the ADEA is controlled by the six-factor inquiry set forth by the Supreme Court in *Clackamas Gastroenterology Associates, P.C. v. Wells*. The six factors under the *Clackamas* inquiry are:

> (1) Whether the organization can hire or fire the individual or set the rules and regulations of the individual's work;
> (2) Whether and, if so, to what extent the organization supervises the individual's work;
> (3) Whether the individual reports to someone higher in the organization;
> (4) Whether and, if so, to what extent the individual is able to influence the organization;
> (5) Whether the parties intended that the individual be an employee, as expressed in written agreements or contracts;
> (6) Whether the individual shares in the profits, losses, and liabilities of the organization.

*Clackamas*, 538 U.S. at 449–50 (quoting EEOC Compliance Manual § 605:0009); *see also*, *Coleman v. New Orleans and Baton Rouge Steamship Pilot's Association*, 437 F.3d 471, 480 (5th Cir. 2006). The Court will now apply these factors to Van Pelt, Woolson, and Cihal. Defendant contends that "none of these three partners can be fired" and "their professional work is not subject to rules and regulations imposed unilaterally by [the firm]."[21] Defendant also asserts that Van Pelt, Woolson, and Cihal are not supervised nor are they made to report to anyone else at the firm. Furthermore, Defendant contends that "each has an equal right and opportunity to influence [the firm], the Partnership Agreement exhibits an intent for each to be a partner not an employee, and each shares "in the profits, losses and liabilities of [the firm]."[22]

Conversely, Plaintiff contends that Van Pelt, Woolson, and Cihal could be terminated by a vote of two or three of the other partners. Plaintiff also argues that each of these partners was supervised to the same extent as any of the staff accountants employed by Defendant. Plaintiff claims that Van Pelt, Woolson, and Cihal all had to report to "an 'audit manager' and a 'tax manager' who in turn, report to the Managing Partner, who in turn, reports to the Management Committee." Plaintiff argues that Van Pelt, Woolson, and Cihal had very limited ability to influence the decisions of the firm because they held the three smallest equity shares in the firm. Plaintiff also points out that Defendant's 401(k) plan designates Van Pelt, Woolson, and Cihal as "employees." Finally, Plaintiff contends that Van Pelt, Woolson, and Cihal had the smallest three partnership shares in the profits, losses, and liabilities of the firm.

Considering the facts in the light most favorable to Plaintiff, the Court finds that Van Pelt,

---

[21] Defendant's Motion for Summary Judgment (Dkt. #23), p.21.

[22] *Id.*

14

Woolson, and Cihal cannot be considered "employees" under the ADEA. First, the Court notes that the only cases which have considered equity partners as "employees" under common law principles dealt with large partnerships where control is concentrated in a small number of managing partners. See *Hishon v. King & Spalding*, 467 U.S. 69, 79 n. 2 (1984); *E.E.O.C. v. Sidley Austin Brown & Wood*, 315 F.3d 696, 709 (7th Cir. 2002); *Strother v. Southern California Permanente Medical Group*, 79 F.3d 859, 867-68 (9th Cir. 1996). In such cases, there are partners without true controlling interests in the partnership. They are thus only nominally partners and have none of the characteristics of a partner under the common law. However, as Judge Easterbrook has pointed out in his concurrence in *E.E.O.C. v. Sidley Austin Brown & Wood*, "[n]o one believes that a *bona fide* partner is in a master-servant relation with the partnership, or that the partner 'is employed by' the partnership." *Sidley Austin*, 315 F.3d at 709 (Easterbrook, J., concurring in part and concurring in the judgment) (citing *Hishon*, 467 U.S. at 79 (Powell, J. concurring).

Plaintiff's contention that Van Pelt, Woolson, and Cihal are not "*bona fide*" partners hinges on the fact that they hold the three smallest equity shares in the firm. However, Van Pelt, Woolson, and Cihal are three of only six equity partners. The equity percentages of all six partners are as follows:

| Partner | Equity Percentage |
|---|---|
| Stephen W. Van Manen | 24.50% |
| Earl T. Fales | 21.00% |
| Eric L. Kucera | 21.00% |
| Dennis C. Cihal | 15.50% |
| Edward B. Woolson | 9.00% |
| Clayton P. Van Pelt | 9.00% |

Each partner has a right to control the firm equal to his partnership share. Although Plaintiff is

correct to observe that Van Pelt, Woolson, and Cihal have smaller equity percentages than the other three partners, she has misinterpreted the relevance of that fact under the *Clackamas* inquiry. The *Clackamas* inquiry is designed to identify situations in which an employee is given a title traditionally reserved for someone in an ownership position without any of the attendant rights, privileges, and responsibilities of control. In such an instance, a shareholder, director, or partner may in fact be an employee. However, the *Clackamas* inquiry does not suggest that a partner in a partnership may be designated as an "employee" merely because some other partner has been granted more of the rights, privileges, and responsibilities traditionally attendant to partnership. The Court finds that Plaintiff's characterization of Van Pelt's, Woolson's, and Cihal's relationship with Defendant establishes that each of those three partners had more than a nominal ownership interest in the firm and could exercise their interest in the form of votes to influence the management of the firm and the composition of the partnership. Furthermore, Plaintiff's characterization of the facts also establishes that Van Pelt, Woolson, and Cihal were members of the governing body to whom they reported and that they were not closely supervised. The facts upon which Plaintiff relies to assert that Van Pelt, Woolson, and Cihal are not "*bona fide*" partners under the common law, such as the fact that they are designated "employees" in the firm's 401(k) profit sharing plan and the fact that all professional employees of the firm retained some degree of independence, could just as easily apply to the partners with the three largest equity percentages.

The Court finds that the facts evaluated in the light most favorable to Plaintiff paint a picture of a traditional professional partnership with six equity partners and somewhere between seventeen and twenty-one employees. The Court further finds each partner in the firm enjoyed the rights, privileges, and responsibilities attendant to the role of a "*bona fide*" partner. The *Clackamas* inquiry is not intended to be applied in lieu of a traditional understanding of partnership, but in order to

16

distinguish traditional partnerships from more modern business associations in which many individuals are only nominally partners. Therefore, the Court finds that Van Pelt, Woolson, and Cihal are "*bona fide*" partners under traditional common law principles and, thus, they cannot be "employees" under the ADEA. Defendant's motion should therefore be granted as to these three individuals.

### C.     *Timeliness of State Discrimination Claim*

Defendant also contends that Plaintiff's state law claim of discrimination was not timely filed under Texas law. Under Texas law, an employee alleging employment discrimination must file a written sworn complaint with the E.E.O.C. or the Texas Commission on Human Rights ("T.C.H.R.") no later than 180 days after the alleged discriminatory act occurred. TEX. LABOR CODE §§ 21.201–202. The 180-day limitations period begins to run when the employee is informed of the allegedly discriminatory employment decision, not when the consequences of that decision finally come to fruition. *Specialty Retailers, Inc. v. DeMoranville*, 933 S.W.2d 490, 492 (Tex. 1996). Plaintiff claims that when she was informed in June 2004 that she would be terminated, she was not apprised of the date, certainty, or any other details of the termination. Therefore, Plaintiff contends, the 180-day limitations period did not begin to run until she was terminated in January 2005. Conversely, Defendant contends that Plaintiff was unequivocally informed of her imminent termination on June 28, 2004 when she was orally informed of the decision by Stephen Van Manen. Therefore, according to Defendant, the limitations period expired in December 2004.

The Court finds that whether Plaintiff was unequivocally informed of her termination on June 28, 2004 is a disputed issue of material fact and, therefore cannot be the basis of the Court's determination. However, the Court finds that Plaintiff's admission in her affidavit that, "[o]n July 9, 2004, Mr. Van Manen provided me with a letter stating, in part '. . . the partners have discussed

your position and . . . . have decided to eliminated that full-time position entirely on January 31, 2005,"[23] demonstrates that Plaintiff was unequivocally put on notice that her position would be terminated as of July 9, 2004. Therefore, the Court finds that the 180-day limitations period expired on January 5, 2005. Consequently, Plaintiff's complaint with the E.E.O.C. and the T.C.H.R., which was filed on February 8, 2005, was not timely filed and, therefore, Plaintiff cannot maintain her state law discrimination claim against Defendant.

## CONCLUSION

For the reasons stated above, the Court finds that Defendant's Motion for Summary Judgment and Motion for Reconsideration of March 24 Order (Dkt. #23) is GRANTED in part and DENIED in part.

It is so ORDERED.

Signed this 14th day of June, 2006.

_____
JOHN D. RAINEY
UNITED STATES DISTRICT JUDGE

---

[23] Plaintiff's Response (Dkt. #24), Exhibit A, ¶ 19.